UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID PARKER, | ) | Case No. 1:08 CV 2011 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

David Parker filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) and §1383(c)(3) from the administrative denial of disability insurance benefits and supplemental security income. At issue is the ALJ's decision dated January 18, 2008, which stands as the final decision of the Commissioner. See 20 C.F.R.§404.1481, §416.981. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Parker contends that he became disabled primarily due to diabetes mellitus, Hepatitis C, fatigue, and depression. This is the second decision made in this matter. The Appeals Council rejected a prior July 20, 2006 determination due to incomplete consideration of the evidence of mental impairment (Tr. 326). The matter was remanded with instruction to obtain additional evidence on mental impairment, further evaluate the evidence of mental impairment, consider Parker's residual functional capacity in light of SSR 85-16 and 96-8p, and potentially obtain vocational expert testimony. (Tr. 327).

1:08 CV 2011                                                                                    2

At the time of the second decision on January 18, 2008, Parker was 54 years of age. His past relevant work had consisted of commercial cleaner, industrial cleaner, laborer, tow motor operator, and mixer operator. (Tr. 640-46). As suggested by the Appeals Council, vocational opinion was obtained. The vocational expert at the second administrative hearing testified that Parker's past relevant work required heavy to light exertion (Tr. 641-46). Under a hypothetical that Parker remains capable of performing light work with normal breaks, low-stress, non-public tasks without arbitration, negotiation, confrontation or directing the work of others, the vocational expert testified that Parker could perform other jobs as order filler, continuous towel roller at a laundry, and light cleaning. (Tr. 25, 648-49). In order to find that Parker could perform light work, the ALJ had to reject the opinion of the treating physician, Dr. Panduranga, in whose opinion Parker was restricted to less than the full range of sedentary work (Tr. 21-22, 484-85).

Parker challenges this conclusion arguing that his diabetes was a severe impairment, the ALJ improperly evaluated the medical opinions, and the ALJ failed to consider evidence favorable to disability.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see

1:08 CV 2011                                                    3

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate

1:08 CV 2011                                                                  4

the existence of types of employment compatible with the individual's disability. *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

*Failure to Consider Diabetes mellitus as a Severe Impairment was not Reversible Error:*

Parker argues that he was diagnosed with diabetes in April 2007, and that condition may be responsible for his complaints of fatigue, rather than Hepatitis C. He claims that notation to fatigue, lack of energy or lethargy were found throughout the record. Parker also relies on his claim of visual blurring (Tr. 480, 521). No diabetic retinopathy, though, was found. (Tr. 521). The Commissioner counters that the ALJ was not obligated to credit a subjective complaint of blurred vision where it was not objectively substantiated citing SSR 96-4p.

SSR 96-4p does answer part of the argument presented, but only concerning alleged visual blurring. That rule concerns "symptoms" and whether there is medically determinable impairment. It explains that an impairment must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Visual blurring was not so established. That symptom was not a "medically determinable physical or mental impairment." See   SSR 95-4p: TITLES II AND XVI: SYMPTOMS, MEDICALLY DETERMINABLE PHYSICAL AND MENTAL IMPAIRMENTS, AND EXERTIONAL AND NONEXERTIONAL LIMITATIONS,  1996 WL 374187, at *1

1:08 CV 2011                                     5

Diabetes, on the other hand, was a medically determinable physical impairment in this record. However, because diabetes was not deemed to be a severe impairment, it was not considered beyond the second step of the sequential evaluation process.  Nonetheless, the ALJ did proceed with consideration of other impairments through the fifth step after finding that Parker could no longer perform his past relevant work. "[A]n ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. Nov. 9, 2007); *Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."). Consequently, there was no reversible error.

*Evaluation of opinion from the treating Gastroenterologist :*

Dr. Panduranga, Parker's treating gastroenterologist completed a medical questionnaire stating that Parker could stand/walk 3-4 hours per day, sit 3-4 hours per day, but only lift or carry 5 pounds maximum. (Tr. 484-86). Push/pulling was markedly limited and there were moderate restrictions against bending, reaching, handling and repetitive foot movements (Tr. 486). These limitations were attributed to weight loss, and chronic back and abdominal pain (*Id.*). The doctor concluded this residual functional capacity assessment with the notation Parker is unemployable.(Tr. 21).

1:08 CV 2011                                                     6

The ALJ rejected this opinion and opted to assign Parker to light work. There were several parts to the ALJ's explanation. First, the ALJ explained that the doctor did not provide a basis for these limitations and did not explain why Parker is unable to work at this reduced level of exertion. (Tr. 21).[1]  The ALJ also criticized the doctor's opinion because there is no clinical or radiological evidence of liver cirrhosis, and that there was evidence that Parker had been drinking contrary to medical instruction. (Tr. 22).  Reversal is required when in rejecting a treating physician's opinion the ALJ failed to give "good reasons" for not giving weight to that opinion. See *Wilson v. Commissioner of Soc. Sec.*  378 F.3d 541, 544 (6th Cir. 2004).

*Pain as Basis for Medical Opinion:*

The ALJ concluded, "After considering the evidence I find that Mr. Parker's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 21).  What is key is that the ALJ accepted Parker's complaints of pain by finding that Parker's impairments "could reasonably be expected to produce the alleged symptoms." From the juxtaposition of this statement with the ALJ's reference to SSR 96-7p, which governs pain analysis, it is clear that the ALJ 's finding is made with regard to Parker's alleged pain. (Tr. 21). This case presents a situation where the treating physician's opinion of disability are based on acceptance of largely subjective complaints of pain and evaluation of the alleged pain goes hand-in-hand with

---

[1] This second stated reason is curious, since the ALJ would in any event ignore an opinion grounded on vocational factors which are presumably beyond the treating physician's expertise. See *Wilson v. Sect'y of Health and Human Servs.*, 892 F.2d 1044, 1990 WL 97 (6th Cir. Table 1990); *Smith v. Sect'y of Health and Human Servs.*, 887 F.2d 1088, 1989 WL 123149 (6th Cir. Table 1989); *Craft v. Sect'y of Health and Human Servs.*, 812 F.2d 1406, 1987 WL 36577 (6th Cir. Table 1987).

1:08 CV 2011                                              7

weighing the treating physician's opinion. See *Vance v. Commissioner of Social Sec.,* 260 Fed.Appx. 801, 805, 2008 WL 162942, 4 (6th Cir. 2008)(The ALJ found that activities of daily living were inconsistent with the opinion of disability and level of pain and fatigue alleged.); *Hall v. Commissioner of Social Sec.*, 148 Fed.Appx. 456, 462, 2005 WL 2139890, 6 (6th Cir. 2005) ("Dr. Caudill was most familiar with the pain Hall experienced because of his back."). In effect the matter distills to an issue of credibility. So there is convergence of the proper weight to give the treating physician's opinion and assessment of Parker's credibility in relation to the first reason stated by the ALJ.

*Pain Credibility:*

Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The ALJ nominally noted the factors for consideration under SSR 96-7p, but did not analyze Parker's complaints of pain through the prescribed procedure. (See Tr. 20-21). The ALJ. though, did note complaints of stomach pain, cramps in both arms and back, shortness of breath and difficulty with standing or walking for prolonged periods.(Tr. 21).

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence, but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. See

1:08 CV 2011                                                                8

*Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).     The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secretary of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  The Commissioner has elaborated on this point requiring that the administrative decisions, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2. The ALJ accepted that Parker had underlying medical determinable impairment which would account for pain.

The second question then is the reasonableness of the alleged debilitating pain. The regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or other symptoms based on:

    1.    The claimant's daily activities;

1:08 CV 2011                                                                                        9

      2.        The location, duration, frequency, and intensity of pain;

      3.        Precipitating and aggravating factors;

      4.        The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

      5.        Treatment, other than medication claimant has received for relief of pain; and

      6.        Any other measures used to relieve pain (e.g. lying down or changing position).

      7.        Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

The determination at hand does not contain sufficiently specific reasons with which to evaluate its support from the record. The ALJ rejected Dr. Panduranga's opinion, but accepted the pain on which that opinion was based.  There is apparent inconsistency and this lack of explanation contrary to the dictates of SSR 96-7p and the regulations negated substantial evidence.

*Documentation of Liver Cirrhosis:*

      The ALJ also criticized the doctor's opinion because "[t]reatment records from MetroHealth . . . indicate that Mr. Parker has had elevated liver function tests, but no clinical or radiological evidence of cirrhosis and no stigmata of cirrhosis." (Tr. 22).  However, in another part of the ALJ's findings the ALJ had found liver cirrhosis was one of Parker's severe impairments.(Tr. 18). The findings are obviously inconsistent.  The treatment records from MetroHealth did document liver cirrhosis, as the ALJ concluded on pages 18 and 19 of the determination while referring to exhibits from MetroHealth, *i.e.,* Exhibits 3F, 5F, 6F, 9F, and 14 F (Tr. 18).

1:08 CV 2011                                              10

*Remediability:*

Third, the ALJ rejected Dr. Panduranga's residual functional capacity assessment because there was evidence that Parker had been drinking contrary to medical instruction. (Tr. 22).² This aspect of the ALJ's determination is based on the principle, implemented through 20 C.F.R. §404.1530 and §416.930, that "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." A remediable condition does not qualify for disability insurance benefits. See *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 993 (1967); *Awad v. Secretary*, 734 F.2d 288, 289-90 (6th Cir. 1984); *Hardaway v. Secretary*, 823 F.2d 922, 925 (6th Cir. 1987). The ALJ, however, failed to link Parker's drinking against medical instruction to pain or explain how continued alcohol consumption was the cause of Parker's stomach pain, arm cramping and back pain, which would be reasons to reject this pain as a result of non-compliance. In short, the ALJ did not have substantial evidence to establish that cessation of alcohol consumption would restore Parker's ability to work.  This Court must therefore conclude that the ALJ did not provide "good reasons" for rejecting Dr. Panduranga's residual functional capacity opinion.

*Opinion is uncontradicted:*

There was no physical residual functional capacity assessment from state agency physicians in the record. This lack of evidence to contradict the opinion from the treating physician is significant. Nor did a medical advisor testify at either of Parker's administrative hearings. As a result, there was no contrary medical opinion on Parker's physical capabilities. Uncontradicted opinion

---

² Parker argues that the ALJ also failed to consider that at the time of Dr. Panduranga's opinion, Parker had completed approximately 13 months of alcohol abstinence. (See Tr. 461).

1:08 CV 2011                                          11

from a treating physician is entitled to complete deference in this circuit. See *Cohen v. Secretary of Dept. of Health and Human Services,* 964 F.2d 524, 528 (6th Cir.1992)(citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)(" medical opinions and diagnoses of treating physicians are entitled to great weight, and if uncontradicted, are entitled to complete deference."); and see *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987)(same); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)(same). Accordingly, there is only substantial evidence to support the conclusion that Parker has a residual functional capacity for less than the full range of sedentary work.

*Opinions from Nurse Alaimo and Dr. Bogan:*

The administrative proceeding had focused on the degree of mental restriction present. Advanced Practice Nurse Alaimo opined that Parker was psychologically unemployable due to major depression with psychotic features. (Tr. 351-53). **3** Parker also argues that Dr. Bogan diagnosed "severe" major depressive disorder (Tr. 491). Dr. Bogan commented that depression with psychotic features has significant effect impact on cognition including memory, understanding and social interaction as well as the ability to cope or adapt. (Tr. 492).

---

[3] Nurse Alaimo's opinion is an opinion from an "other medical source." 20 C.F.R.§404.1513(a) and §416.913(a) do not list advanced practice nurses as "acceptable medical sources," but subsection "d" of these regulations does at least acknowledge "nurse practitioners" among the nonexclusive list of "other sources" from which evidence of the severity of impairment may be obtained. However, SSR 06-3p has had a major impact on the deference to be afforded advanced nurses' opinions and has effectively overridden the former discretion held by ALJ's in *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997). See *Cruse, Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The Tenth Circuit in a well-reasoned decision has found administrative error in failing to discuss the weight given to clinical nurse specialist opinion s based extensively on Social Security Ruling (SSR) 06-3p. See *Frantz v. Astrue,* 509 F.3d 1299, 126 Soc. Sec. Rep. Serv. 91 (10th Cir. 2007).

1:08 CV 2011                                             12

The ALJ rejected Nurse Alaimo's opinion (Tr. 22). He found her opinion was inconsistent with a letter written to Dr. Panduranga that Parker was psychiatrically stable (Tr. 350), with the MetroHealth treatment notes and with the evidence as a whole. (Tr. 22). Dr. Bogan found moderate restriction (Tr.490). Consultative psychologist, Dr. Felker, found mild-to-moderate limitation in work-related activities. (Tr. 150). A non-examining state agency psychologist found the record only supported mild restriction (Tr. 152-64). Further Metrohealth treatment notes indicated that Parker understood directions (Tr. 448), had good-to- fair judgment and insight, and he was cooperative and agreeable (Tr. 439-60).

In evaluating opinions from treating sources, the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source." *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). Extending the evaluation criteria from treating medical sources regulatory scheme under §404.1527(d)(2) and its SSI counterpart §416.927(d)(2), consistency and supportability are key. Consistency is simply comparison "with the record as a whole." Supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

1:08 CV 2011                                                13

The ALJ did not ignore Dr. Bogan's report, Parker's treating psychiatrist, but he placed the emphasis in her opinion that Parker's mental impairments posed only "moderate" restriction (Tr. 23, 490). The ALJ stated that this opinion was being given "full weight." (Tr. 23). Parker argues that this was only lip-service deference and that the ALJ's findings ran counter to this opinion. The ALJ found that major depressive disorder limited Parker to low stress non-public tasks which precluded essentially all forms of interactions with the public (Tr. 20). The source for this aspect of the ALJ's opinion appear to be Dr. Konieczny (Tr. 495-502). Dr. Konieczny performed a consultative psychological examination for the state agency and determined that the degree of Parker's impairment was "moderate" (GAF score of 54), [4] and that Parker could interact appropriately with the public, supervisors, or co-workers. (Tr. 498, 501). The ALJ disagreed with the final part of this conclusion stating that the evidence suggested greater limitation on ability to relate to others. (Tr. 23). However while Dr. Bogan and Dr. Konieczny agreed that moderate restriction existed, the ALJ ignored both these medical sources opinion which included mild limitation on complex instruction (Tr. 500), and Dr. Bogan's opinion that there was also restriction on ability to perform short and simple instruction, ability to understand short and simple instruction, and abilities to maintain routine, deal with changes in work setting, or make simple work-related decisions (Tr. 490). These limitations and others were not incorporated in the ALJ's mental residual functional capacity. So, Parker is correct, the ALJ, in reality, did not give Dr. Bogan's assessment of residual functional capacity deference as a treating physician, despite the claim that he had.  The ALJ's rejection of Dr. Bogan's opinion was concealed and thus was not supported by "good reasons."

---

[4]   A GAF score of 51 to 60 is described as indicating: "**Moderate symptoms** (*e.g.* flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peer or co-workers.).

American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, p. 34 (4th Ed. text revision).

1:08 CV 2011                                                                                                14

*Fatigue:*

Fatigue as a symptom of an underlying condition forming the basis of alleged disability is analyzed under the two-part regimen for pain and credibility. See *Cohen v. Secretary of Dept. of Health and Human Services,* 964 F.2d 524, 529 (6th Cir. 1992); *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007); and see SSR 96-7p ; 20 C.F.R. §404.1529; §416.929. Parker argues that the ALJ stated that the impairments could reasonably be expected to cause fatigue, but not to the extent Parker testified. (Tr. 21).

> However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.
>
> *Rogers,* 486 F.3d at 247 -248.

In this matter the ALJ rejected credibility of alleged fatigue on intangible and intuitive notions. The Commissioner argues that the ALJ expressed his reasons for lack of evidence of liver cirrhosis, lack of compliance with medical instruction to stop drinking plus a welfare fraud conviction from 1985. (Tr. 24). Aside from the welfare fraud conviction, the other reasons appeared to be associated with the reasons for rejecting Dr. Panduranga's opinion. (See Tr. 22). There was no

1:08 CV 2011                                        15

analysis approaching the level of scrutiny required under the regulations. Accordingly, this finding also was not supported by substantial evidence.

*Reversal:*

Congress has authorized reversal or remand to the Commissioner under the fourth sentence of 42 U.S.C. §405(g).  See *Faucher v. Secretary of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994), citing *Sullivan v. Hudson*, 490 U.S. 877, 880, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). Generally, when one of the ALJ's factual findings is not supported by substantial evidence, recourse is through a remand under the fourth sentence.  *Faucher*, 17 F.3d at 175-76.  The Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d at 176;  *Mowery v. Heckler*,  771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). This latter situation has occurred in this appeal.

The ALJ's decision is clearly erroneous and proof of disability is strong and evidence to the contrary is lacking since the ALJ relied on an incomplete and /or incorrect evaluations of opinion from treating sources, pain, fatigue , remediability, and in formulating Parker's residual functional capacity assessment.

The final consideration is whether he would be found disabled  under a partial range of sedentary work restriction. During the time period of the decision Parker was a "person closely approaching advanced age" age 54 and less. See 20 C.F.R. §404.1563(d). The vocational expert

1:08 CV 2011                                                     16

testified at the administrative hearing that Parker's skills would transfer under sedentary work. (Tr. 646-47).  Parker argued at the administrative hearing and again in his statement of errors for the application of Rule 201.12 (Tr. 644). See 20 C.F.R. Part 404 , Subpt P, Appx. 2.  Under Table No.1 for sedentary work, a high school graduate closely approaching  advanced age is disabled when his skills do not provide for direct entry into skilled work. See Rules 201.12 and 201.14.  Thus, Parker is disabled commencing with his 50th birthday under the "grids" of Appendix 2.

## *CONCLUSION*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits and supplemental security income is not supported by substantial evidence . The record strongly supports disability and evidence to the contrary is lacking. Accordingly, the decision by the Commissioner is reversed and remanded for the award and calculation of benefits.

                                                    s/James S. Gallas
                                               United States Magistrate Judge

Dated: September 15, 2009